## COMMONWEALTH *vs.* JAMES K. COBURN, JR.

No. 03-P-1164.

Middlesex. June 14, 2004. - October 20, 2004.

Present: CYPHER, SMITH, & DOERFER, JJ.

*Arrest. Motor Vehicle,* Operating under the influence. *Police,* Unlawful arrest.

This court concluded that there was no merit to a criminal defendant's claim that his pretrial motion to suppress certain evidence should have been granted because the evidence was impermissibly yielded by a police officer who observed the defendant speeding and pursued him within the jurisdiction, but stopped the defendant across the town line, where the police officer reasonably believed the stop was made within town lines in reliance on a roadside sign and thus was properly within his jurisdictional authority and not chargeable with misconduct, and where any alternate result would subject officers to unacceptable uncertainties in the exercise of their authority. [315-318]

COMPLAINT received and sworn to in the Concord Division of the District Court Department on September 3, 2002.

A pretrial motion to suppress evidence was heard by *Michael J. Brooks,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Judith A. Cowin,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by her to the Appeals Court.

*Randolph Gioia* for the defendant.

*Kevin J. Curtin,* Assistant District Attorney, for the Commonwealth.

CYPHER, J. A Concord police officer, observing the defendant driving at a high rate of speed, pursued, and the defendant's car stopped short of a highway sign indicating entry into the town of Lincoln. After an inquiry, the defendant was arrested, and subsequently charges of operating a motor vehicle while under the influence of intoxicating liquor (second offense) and speed-

ing were filed in the District Court. In seeking suppression of evidence, the defendant claims that the highway sign is actually thirty feet within Lincoln, and therefore the Concord officer improperly exercised his authority outside of his jurisdiction. The judge denied his motion, and the defendant now appeals that decision.[1]

*Background facts.*[2] The judge's subsidiary findings are not disputed.[3] He found that the Concord police officer, traveling east on Route 2 in Concord at about 4:00 A.M. on August 31, 2002, observed the defendant going at a high rate of speed in the opposite direction, and obtained a speed reading by radar of ninety miles per hour. The posted speed limit in that zone was forty-five miles per hour. The officer saw the defendant turn onto Route 126, reversed his direction to follow, observed the speeding vehicle, and turned on the lights of his cruiser to signal the defendant to stop. The defendant's car stopped just short of a sign indicating the entrance to the town of Lincoln. The officer conducted an inquiry and field sobriety tests leading to the defendant's arrest.

*Discussion.* For the reasons which follow, we think the defendant's attempt to characterize this case as one of improper extraterritorial police action lacks merit.[4] We also conclude the judge need not have ruled on the basis of an extraterritorial action,[5] but that the findings nevertheless support an affirmance of

---

[1]The case is here on an order from a single justice of the Supreme Judicial Court allowing the defendant's interlocutory appeal to this court.

[2]The judge issued a revised decision after a hearing on the defendant's motion for reconsideration. Our review is confined to the revised decision.

[3]Neither the defendant nor the Commonwealth presents any statement of detailed facts. The District Court docket indicates that two photo exhibits and a county map were introduced at the hearing. These materials were not explicitly cited by the judge, nor were they submitted to this court. The Commonwealth's brief refers to a one-volume transcript of the hearing, but upon our inquiry, we were informed by the Commonwealth that the audiotape of the hearing had not been transcribed. Accordingly, we proceed only on the record actually submitted.

[4]The Commonwealth did not argue that the facts of this case would have supported an arrest for operating a motor vehicle to endanger (G. L. c. 90, § 24[2][a]), and we do not consider the issue.

[5]The judge treated the present case as one of police exercise of extraterritorial authority, relying on *Commonwealth* v. *Twombly*, 435 Mass. 440 (2001). He recognized the Concord officer could not pursue the defendant into another

the denial of the defendant's motion. "An appellate court is free to affirm a ruling on grounds different from those relied on by the motion judge if the correct or preferred basis for affirmance is supported by the record and the findings." *Commonwealth* v. *Va Meng Joe*, 425 Mass. 99, 102 (1997).

The Concord officer observed the defendant speeding and began pursuit within his jurisdiction. The defendant's car stopped just short of a sign indicating the entrance to the town of Lincoln. The judge found that the officer, a twenty-one year veteran of the Concord police department, was familiar with the area of the stop and believed the stop was made in the town of Concord. These circumstances of the officer's actions at the relevant times reasonably support a conclusion that the officer properly exercised his jurisdictional authority.

We think that such a conclusion cannot be undermined by the defendant's subsequent assertion that the actual line dividing the towns of Concord and Lincoln indicates that the stop occurred within Lincoln. The judge found, "on a view requested by the parties, approximately 30 feet before the town line sign is a stone marker with the letter 'L' on its southern face and the letter 'C' on its northern face. This marker is the actual locus of the town line between the Towns of Concord and Lincoln; hence, the defendant's vehicle came to a stop in the Town of Lincoln and the [police officer's] inquiry and subsequent actions, which resulted in the defendant's arrest, occurred in the Town of Lincoln." While there is no dispute that the stone marker is set on the imaginary line between the towns, there is nothing in the record to indicate where it is set in relation to the roadway, or whether it would have been visible from the area where the defendant's car stopped, or visible to the Concord officer at any time. Moreover, the record does not indicate there were any other visible and objective indicia of the boundary between Concord and Lincoln.

The defendant's fortuitous and after-the-fact discovery that his car came to a stop less than thirty feet in another jurisdiction should not determine the outcome of this case. As was said

---

jurisdiction for the civil infraction of speeding. Instead, he drew a conclusion from *Twombly* that the officer could act in another jurisdiction on his own initiative where there is an imminent danger of a breach of the peace. It is unnecessary for us to decide whether *Twombly* may be so interpreted.

in *Saharceski* v. *Marcure*, 373 Mass. 304, 311-312 (1977), we agree that the "elimination of happenstance, a sort of unknowing geographical Russian roulette, as the controlling factor is particularly significant" in a case such as this, where the basis for initiating a stop of the defendant, and all but a few feet of his subsequent travel before stopping occurred within the officer's jurisdiction. If a favorable "geographical Russian roulette," virtually a lucky turn of the wheel, were determinative of the outcome of cases such as this, police officers would be subjected to unacceptable uncertainties in the exercise of their authority.

Nonetheless, in the circumstances, we think consideration is required of the Commonwealth's argument and the defendant's argument in reply, on the applicability of the exclusionary rule to deter police misconduct where an officer lacks authority in making an extraterritorial arrest. See *Commonwealth* v. *LeBlanc*, 407 Mass. 70, 75 (1990). We assume, without deciding, that the stop and arrest were extraterritorial. The officer's lack of knowledge of the precise location of the imaginary line between Concord and Lincoln cannot be viewed as unreasonable or based on misconduct attributable to the police. The officer reasonably could rely on the roadside sign, and there is no indication that the officer ever had knowledge that it differed in location from the stone boundary marker.[6] The defendant asserts that the error here was of the officer's own doing, as in *Commonwealth* v. *Censullo*, 40 Mass. App. Ct. 65, 68-69 (1996). The defendant's reliance on that case is misplaced. In *Censullo*, the "incorrect information on which the arrest was based was chargeable to the police." *Commonwealth* v. *Wilkerson*, 436 Mass. 137, 141 (2002). *Censullo* involved a stop based on an officer's mistaken belief that the defendant was going the wrong way on a one-way street, even though there were no objective indications at the scene of a violation of the law. *Commonwealth* v. *Censullo*, 40 Mass. App. Ct. at 66-67, 69-70. As we have determined previously, the record here does not support a conclusion that the officer was chargeable with misconduct. In a

---

[6]Nothing in the record describes the sign or indicates whether it was erected by municipal or State authority. The Commonwealth refers to it as "official," and the defendant calls it a "highway department" sign.

closely analogous situation, where police relied on mistaken information from a State agency independent from law enforcement, the exclusionary rule was not implicated because there was no unlawful conduct of the police to be deterred. See *Commonwealth* v. *Wilkerson, supra* at 142-143, and cases cited.

Accordingly, we conclude that even if the Concord officer was acting outside his jurisdiction, in these particular circumstances, suppression is not justified.

The denial of the defendant's motion to suppress is affirmed.

*So ordered.*